UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 1 9 2010

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| MARKEL AMERICAN INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> TAYLOR MORRISON SERVICES, INC. f/k/a Morrison Homes, Inc., <br><br> Defendant. | Civil Action File No. <br><br> 1 10 · CV - 0793 |

Civil Action File No.

1 10 · CV - 0793

-JEC

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs Markel American Insurance Company ("Markel") and Zurich American Insurance Company ("Zurich") (collectively, "Plaintiffs") file this Complaint for Declaratory Judgment, alleging as follows:

### SUMMARY OF ACTION

1.

This insurance coverage and declaratory judgment action arises out of claims that Defendant Taylor Morrison Services, Inc. f/k/a Morrison Homes, Inc. ("Taylor Morrison") is entitled to insurance coverage in connection with the lawsuit styled Rosa et al. v. Morrison Homes, Inc. et al., Superior Court of California – County of Stanislaus, Case No. 373059 (the "Underlying Lawsuit").

2.

Plaintiffs seek a declaration that, under their respective liability insurance policies, they have no obligation to indemnify, defend, or pay any sum in connection with the Underlying Lawsuit or the Underlying Plaintiffs' claims.

## JURISDICTION AND VENUE

3.

Plaintiffs file this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201.

4.

Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(1). The matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy Five Thousand Dollars.

5.

The amount in controversy exceeds the minimum jurisdictional amount because this action concerns the Plaintiffs' respective defense and indemnity obligations to Defendant, if any, with respect to the Underlying Lawsuit, in which damages including repair of slabs and foundations are alleged with respect to a certified class consisting of approximately 437 homes.

6.

There is complete diversity of citizenship among Plaintiffs and Defendant.

7.

Venue in this District is proper under 28 U.S.C. § 1391(a)(2), in that policies of liability insurance that are the subject of this action were issued to Taylor Morrison at its address in this judicial district.

8.

An actual case and controversy of justiciable nature exists among the parties and involves the rights and obligations, if any, of the parties pursuant to the respective insurance policies. Plaintiffs are entitled to bring this declaratory judgment action in this Court.

## THE PARTIES

9.

Defendant Taylor Morrison is a Delaware corporation with its principal place of business located in Arizona. Taylor Morrison can be served through its registered agent in Georgia, National Registered Agents, Inc., 3675 Crestwood Parkway, Suite 350, Duluth, Gwinnett County, Georgia 30096.

10.

Plaintiff Markel is a Virginia corporation with its principal place of business in Wisconsin.

11.

Plaintiff Zurich American Insurance Company ("Zurich") is a New York

-3-

corporation with its principal place of business in Illinois.

## THE UNDERLYING LAWSUIT

### 12.

The Underlying Lawsuit concerns alleged defects in the design and/or construction of the foundations at homes in the Eureka, Maravilla, and Heirloom tracts in Salida, California.

### 13.

Plaintiffs in the Underlying Lawsuit ("Underlying Plaintiffs") filed their Class Action Complaint in or about July 2005, asserting claims for strict liability, negligence, concealment, intentional misrepresentation, negligent misrepresentation, breach of express warranty, nuisance, and unfair business practices.

### 14.

On April 26, 2006, Underlying Plaintiffs filed their First Amended Class Action Complaint, naming Morrison Homes, Inc. as a defendant. The First Amended Class Action Complaint asserted causes of action for concealment, intentional misrepresentation, negligent misrepresentation, breach of express warranty, breach of implied warranty, violations of California Business and Professions Code § 17500, and violations of California Business and Professions

Code § 17200. A copy of the First Amended Class Action Complaint filed in the Underlying Lawsuit is attached as Exhibit 1.

15.

On April 30, 2009, the Superior Court of California for the County of Stanislaus entered an Order granting the Underlying Plaintiffs' motion for class certification for original homebuyers and subsequent homebuyers (who purchased homes from other homeowners) in the Eureka, Maravilla, and Heirloom tracts in Salida, California, with regard to certain of the Underlying Plaintiffs' claims.

16.

The Underlying Plaintiffs allege in the Underlying Lawsuit that their houses were not designed or constructed in a reasonable and workmanlike manner.

17.

The Underlying Plaintiffs also allege that Taylor Morrison falsely represented that the houses were free of defects and constructed in a reasonable and workmanlike manner. [Ex. 1, ¶¶ 47 and 57.]

18.

The Underlying Plaintiffs further allege that Taylor Morrison intentionally and willfully failed to disclose that the foundations of the houses were not built to code and were defective because they did not include a four-inch gravel barrier to absorb moisture. [Ex. 1, ¶ 42.]

19.

The Underlying Plaintiffs further allege that Taylor Morrison breached express and implied warranties and seek damages for breach of their contractual obligations. [Ex. 1, ¶¶ 64 – 75.]

20.

The Underlying Plaintiffs seek punitive damages, alleging that Taylor Morrison acted in conscious disregard and with malice, oppression and/or fraud. [Ex. 1, ¶¶ 43-44].

21.

The Underlying Plaintiffs also seek injunctive relief against Taylor Morrison. [Ex. 1, ¶ 85.]

22.

For their claims for violations of California Business and Professions Code Sections 17500 and 17200, the Underlying Plaintiffs allege Taylor Morrison engaged in deceptive and misleading advertising and unfair, unlawful or fraudulent business practices and seek restitution of moneys wrongfully or unjustly acquired by Taylor Morrison. [Ex. 1, ¶¶ 79 & 84.]

## RESERVATION OF RIGHTS

23.

On September 28, 2006, Zurich sent a reservation of rights letter to Taylor Morrison, advising of Zurich's agreement to provide Taylor Morrison a defense in the Underlying Lawsuit subject to the per occurrence limit of insurance and subject to a complete reservation of rights, including reservation of the right to withdraw from any indemnity or defense should it be determined that no coverage applies to the Underlying Lawsuit and the right to recover from Taylor Morrison any payment for all or some attorneys fees for claims not potentially covered by the Zurich policies.

24.

On March 17, 2010, Markel sent a reservation of rights letter to Taylor Morrison, advising that Markel continues to investigate the claims asserted against Taylor Morrison in the Underlying Lawsuit under a complete reservation of rights.

## ZURICH'S GENERAL LIABILITY INSURANCE POLICIES

25.

Zurich issued commercial general liability policies to Morrison Homes, Inc., under the following policy numbers and effective in consecutive, annual periods:

a.    Policy Number GLO 2090702-00, for the policy period November 1, 1997 to November 1, 1998 (the "1997-1998 Zurich Policy");

b.    Policy Number GLO 2090702-01, for the policy period November 1,
      1998 to November 1, 1999 (the "1998-1999 Zurich Policy");

c.    Policy Number GLO 2090702-02, for the policy period November 1,
      1999 to November 1, 2000 (the "1999-2000 Zurich Policy");

d.    Policy Number GLO 2090702-03, for the policy period November 1,
      2000 to November 1, 2001 (the "2000-2001 Zurich Policy"); and

e.    Policy Number GLO 2090702-04, for the policy period November 1,
      2001 to November 1, 2002 (the "2001-2002 Zurich Policy").

Collectively, the policies alleged in this Paragraph are referred to as the "Zurich
Policies."

26.

The Zurich Policies provide in part:

a.    We will pay those sums that the insured becomes legally
      obligated to pay as damages because of "bodily injury" or
      "property damage" to which this insurance applies.  We will
      have the right and duty to defend the insured against any "suit"
      seeking those damages.  However, we will have no duty to
      defend the insured against any "suit" seeking damages for
      "bodily injury" or "property damage" to which this insurance
      does not apply … But:

      (1)   The amount we will pay for damages is limited as
      described in LIMITS OF INSURANCE (SECTION III)….

27.

Insurance under the Zurich Policies is subject to a per occurrence deductible and subject to an Each Occurrence Limit of Insurance in the amount of $1,000,000. The Zurich Policies provide:

SECTION III – LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  Insureds;

    b.  Claims made or "suits" brought; or

    c.  Persons or organizations making claims or bringing "suits".

* * *

5.  Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a.  Damages under Coverage A; and

    b.  Medical expenses under Coverage C

    because of all "bodily injury" and "property damage" arising out of any one "occurrence".

28.

Coverage under the Zurich Policy extends to sums the insured is "legally obligated to pay as damages" because of "bodily injury" or "property damage," and coverage does not extend to claims for restitution or injunctive relief.

29.

Coverage under the Zurich Policies for damages because of "bodily injury" or "property damage" applies only when such "bodily injury" or "property damage" is caused by an "occurrence" as defined by the Zurich Policies. The Zurich Policies provide in part:

> b.    This insurance applies to "bodily injury" and "property damage" only if:
>
>    (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"....

30.

Coverage under any of the Zurich Policies for damages because of "bodily injury" or "property damage" applies only when such "bodily injury" or "property damage" occurs during the policy period for that Zurich Policy. The Zurich Policies provide in part:

> b.    This insurance applies to "bodily injury" and "property damage" only if:
>
>    * * *
>
>    (2)    The "bodily injury" or "property damage" occurs during the policy period ....

31.

The Zurich Policies define "occurrence" as:

an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

### 32.

The Zurich Policies define "property damage" to mean:

a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

### 33.

The Zurich Policies contain exclusions for "Damage to Your Work" that

provide:

2.    Exclusions

This insurance does not apply to:

* * *

l.    Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### 34.

The Zurich Policies define "your work" to mean:

a.   Work or operations performed by you or on your behalf; and

b.   Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b.   The providing of or failure to provide warnings or instructions

35.

The Zurich Policies contain exclusions for "Damage to Property" that provide:

2.   Exclusions

This insurance does not apply to:

\* \* \*

j.   Damage to Property

"Property damage" to:

\* \* \*

(5)   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations ....

-12-

36.

The Zurich Policies contain exclusions for "Property Damage to the Insured's Work" that provide:

It is agreed that Exclusion J.(6) is replaced by the following:

"Property damage" to that particular part of "your work" that is defective or actively malfunctions.

This exclusion applies to the "products-completed operations" hazard. It does not apply if the damaged work or the work out of which damage arises was performed on your behalf by a subcontractor.

37.

The Zurich Policies contain exclusions for "Damage to Impaired Property or Property Not Physically Injured" and "Recall of Products, Work or Impaired Property" that provide:

2.    Exclusions

This insurance does not apply to:

* * *

m.    Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.    Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)    "Your product";

(2)    "Your work"; or

(3)    "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

38.

The Zurich Policies contain exclusions for "Contractual Liability" that

provide:

2.    Exclusions

This insurance does not apply to:

* * *

b.    Contractual Liability

-14-

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement ....

39.

The Zurich Policies contain exclusions for "Expected or Intended Injury" that provide:

2.    Exclusions

This insurance does not apply to:

a.    Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

40.

The 1997-1998 Zurich Policy, 1998-1999 Zurich Policy, and 1999-2000 Zurich Policy contain the "Exclusion for Known Loss and Loss in Progress" that provides:

It is ... agreed that the following exclusion shall be added to the policy and formal part of the policy, subject to the terms and conditions of the policy.

This insurance does not apply to:

(1)    any injury or damage which incepts prior to the effective date of this policy; or

(2)    any occurrence, loss, or claim of which the insured had knowledge or notice prior to the effective date of this policy; or

(3)    any claim for injury or damage which is first asserted against the insured prior to the effective date of this policy.

41.

The 2000-2001 Zurich Policy and 2001-2002 Zurich Policy contain the

"Amendment of Insuring Agreement -- Known Injury or Damage" that provides in

part:

b.    This insurance applies to "bodily injury" and "property damage" only if:

* * *

(3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1 of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

42.

The Zurich Policies contain the Claim Series Endorsement applicable to the

Each Occurrence Limit of liability.  The Claim Series Endorsement provides:

1.   In consideration of premium charged, it is agreed that … "bodily injury" or "property damage" arising from any series of claims or "suits" as a result of a common cause or condition of "your product" or "your work" shall be deemed to be one "occurrence", regardless of the number of insureds, claims made or "suits" brought, or the number of persons or organizations making claims or bringing "suits".  All claims or "suits" for damages from such "common cause or condition" shall be deemed to have been made at … the first of those claims or "suits" is made against any insured.

2.   Subject to the Products-Completed Operations Aggregate Limit of this policy, our liability for all damages arising out of an "occurrence" as described in paragraph 1. (above) shall not exceed the Each Occurrence Limit of liability as stated on the Declarations page of the policy.

3.    The following definition applies:

"Common Cause or Condition" means arising from the same or similar design error or defect, manufacturing defect, or failure of the insured to warn of the same or similar potential hazard in or of "your products" or "your work".

43.

The 1998-1999 Zurich Policy, 1999-2000 Zurich Policy, 2000-2001 Zurich

Policy and 2001-2002 Zurich Policy contain exclusions for Engineers, Architects

or Surveyors Professional Liability that provide:

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1.    The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2.    Supervisory, inspection, architectural or engineering activities.

**MARKEL'S UMBRELLA INSURANCE POLICY**

44.

Markel issued Commercial Umbrella Liability Policy No. CU-NJ-2181-00,

listing Morrison Homes, Inc. as the named insured, for the policy period November

1, 2000 to November 8, 2001 (the "Markel Umbrella Policy").  A copy of the

Markel Umbrella Policy is attached as Exhibit 2.

45.

The Markel Umbrella Policy is excess of Zurich's liability insurance policy

no. GL02090702-03.

46.

The Markel Umbrella Policy provides in part:

We will pay on behalf of the insured for that portion of "ultimate net
loss" in excess of the "retained limit" because of "bodily injury" or
"property damage" to which this insurance applies, but only up to the
Limits of Insurance stated in Item 3. of the Declarations.

[Ex. 2, § I, Coverage A, A.]

47.

The Markel Umbrella Policy further provides that the insurance applies to

"bodily injury," "property damage," "personal injury," and "advertising injury"

only if:

1.    The "bodily injury" or "property damage" was caused by an
      "occurrence," and/or the "personal injury," or "advertising
      injury" was caused by an "offense";

2.    The "occurrence" or "offense" took place in the "coverage
      territory," and

3.    The "bodily injury," "property damage," "personal injury," or
      "advertising injury" occurred during the policy period of this
      policy.

[Ex. 2, § I, A.]

48.

The Markel Umbrella Policy's Prior Incident(s) and Prior Construction

Defects Exclusion provides in part:

> In consideration of the premium charged, it is hereby understood and agreed that no insurance coverage is provided under this policy to defend or indemnify any insured for "Ultimate Net Loss" which has first occurred or begun prior to the effective date of this policy, regardless of whether repeated or continued exposure to conditions which were a cause of such "Ultimate Net Loss" occur during the period of this policy and cause additional, progressive or further "Ultimate Net Loss", all of which is excluded from coverage.
>
> This exclusion shall apply whether or not the insured's legal obligation to pay damages has been established as of the inception date of this policy.

49.

The Markel Umbrella Policy sets forth the following "damage to property"

exclusion:

> This insurance does not apply to:
>
>                 * * *
>
> 6.    "Property damage" to:
>
>                 * * *
>
> e.    That particular part of real property on which you or a contractor or subcontractor working directly or indirectly for you are performing operations, if the "property damage" is due to those operations; or

f.    That particular part of real property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * *

Paragraph f. of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

[Ex. 2, §I, B.6.]

50.

The Markel Umbrella Policy also contains the "your work" exclusion,

excluding coverage for:

8.    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damages arises was performed for you by a subcontractor.

[Ex. 2, §I.B.8.]

51.

The Markel Umbrella Policy's Contractors Limitation Endorsement provides

in part that the policy "shall not apply to Ultimate Net Loss:"

* * *

2.    To property being installed, erected or worked upon by the insured, his agents or subcontractors; or

3.    To any professional services performed by or for the Insured including (but not limited to):

a.    The preparation or approval of maps, plans, opinions, reports, surveys, designs, or specifications; and

b.    Supervisory, inspection or engineering services.

\* \* \*

[Ex. 2, Endorsement 10.]

52.

The Markel Umbrella Policy also precludes coverage for:

"Property damage" to "impaired property" or property that has not been physically injured or destroyed arising out of:

a.    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

b.    A delay or failure by you or anyone acting for you or on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property due to sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

[Ex. 2, §I.B.9.]

53.

The Markel Umbrella Policy excludes coverage for:

Damages claimed for all loss, costs or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of "your product," "your work," or "impaired property" if such work or property is withdrawn or recalled from the market or from use by a person or organization due to a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

[Ex. 2, §I.B.10.]

54.

In addition, the Markel Umbrella Policy's Breach of Contract Exclusion provides that the "insurance does not apply to the ultimate net loss arising out of, or contributed in any way by, any Breach of Contract whether express or oral, nor for any Breach of an implied in law or implied in fact contract."   [Ex. 2, Endorsement 4 (Breach of Contract Exclusion).]

55.

The Markel Umbrella Policy's Construction Management E and O Exclusion states:

### CONSTRUCTION MANAGEMENT E & O EXCLUSION

This policy shall not apply to Ultimate Net Loss arising out of:

1.  The preparing, approving, or failure to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications by any architect, engineer, or surveyor performing services on a project on which you serve as a construction manager; or

2.  Inspection, supervision, quality control or engineering services done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to injury or damage due to construction or demolition work done by you, or on your behalf.

[Ex. 2, Endorsement 11.]

56.

The Markel Umbrella Policy does not provide coverage for "punitive damages, exemplary damages, treble damages, or any damages resulting from the multiplication of compensatory damages, including any other fines or penalties." [Ex. 2, Endorsement 7 (Punitive Damages Exclusion).]

57.

The Markel Umbrella Policy excludes coverage for:

"Bodily injury" or "property damage" that is intended by the insured or can be expected from the standpoint of a reasonable person to cause "bodily injury" or "property damage," even if the "bodily injury" or "property damage" is of a different degree or type than actually intended or expected. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

[Ex. 2, § I, B.1.]

58.

The Markel Umbrella Policy sets forth the following definitions:

a. "Occurrence" means: (a) With respect to "bodily injury" or "property damage" liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions; or (b) With respect to employees of the Named Insured, "bodily injury" caused by accident or disease.

b. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and caused by or arising out of "your product" or "your work" except:

   1) Products that are still in your physical possession; or
   2) Work that has not yet been completed or abandoned.

"Your work" will be deemed completed at the earliest of the following times:

1)     When all work called for in your contract has been completed;

2)     When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

3)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

c.   "Property damage" means: (a) physical injury to tangible property, including all resulting loss of use of that property; or (b) Loss of use of tangible property that is not physically injured or destroyed.

d.   "Retained Limit" means the greater of: (a) that amount of "underlying insurance" applicable to a "claim" or "suit," whether such "underlying insurance" is collectible or not; or (b) The amount of "self-insured retention" as shown in Item 3(E) of the Declarations of this policy for "claims" or "suits" not covered by applicable "underlying insurance."

e.   "Ultimate Net Loss" means the total amount of: (a) damages for which the insured is legally liable in payment of "bodily injury," "property damage," "personal injury," or "advertising injury." "Ultimate net loss" may be established by adjudication, arbitration, or a compromise settlement to which we have previously agreed in writing. "Ultimate net loss" shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of "ultimate net loss" shall not include any expenses incurred by any insured, by us, or by any "underlying insurer."

-25-

f. "Your Work" means: (a) work or operations performed by you or on your behalf; and (b) Materials, parts, or equipment furnished in connection with such work or operations.

[Ex. 2, §VII.]

## COUNT ONE

## DECLARATORY JUDGMENT REGARDING THE MARKEL UMBRELLA POLICY

59.

Plaintiffs adopt and incorporate the above allegations.

60.

Markel is entitled to a declaration that there is no obligation under the Markel Umbrella Policy to indemnify, defend, or make any other payment in connection with the Underlying Lawsuit and the Underlying Plaintiffs' claims, for reasons that include the following:

a. The damage alleged in the Underlying Lawsuit was not caused by an "occurrence" within the meaning of the Markel Umbrella Policy.

b. Exclusions related to "property damage," including exclusions 6.e, 6.f, 8, 9, and 10, preclude coverage.

c. The Breach of Contract Exclusion (Endorsement 4) precludes coverage in part or in whole.

d. The Punitive Damages Exclusion (Endorsement 7) bars coverage for punitive damages, exemplary damages, and treble damages.

-26-

e.    The Ultimate Net Loss involved property was being installed, erected or worked upon by Taylor Morrison, its agents, or subcontractors, and thus the Contractors Limitation Endorsement (Endorsement 10) precludes coverage.

f.    The Markel Umbrella Policy does not provide coverage for the Underlying Plaintiffs' allegations of entitlement to injunctive relief.

61.

Further, Markel is entitled to a declaration that there is no obligation under the Markel Umbrella Policy to indemnify, defend, or make any other payment in connection with the Underlying Lawsuit and the Underlying Plaintiffs' claims to the extent that:

a.    The "Ultimate Net Loss" first occurred or began prior to the effective date of the Markel Umbrella Policy (November 1, 2000).

b.    The claims asserted against Taylor Morrison in the Underlying Lawsuit do not seek damages because of covered "property damage" that took place during the policy period (November 1, 2000 to November 8, 2001).

c.    The Ultimate Net Loss involved any professional services performed by or for Taylor Morrison (Endorsement 10.)

-27-

d.   The Construction Management E & O Exclusion (Endorsement 11) precludes coverage.

e.   Exclusion 1. (expected injury or damage) applies, precluding coverage.

62.

Markel contends that there is no coverage under the Markel Umbrella Policy for the Underlying Lawsuit and the Underlying Plaintiffs' claims based upon facts currently available to it. Markel reserves the right to raise any additional grounds for declaratory judgment in its favor in the future should Markel determine such grounds to exist.

**COUNT TWO**

**DECLARATORY JUDGMENT:**
**NO "OCCURRENCE" WITHIN THE MEANING**
**OF THE ZURICH POLICIES**

63.

Plaintiffs adopt and incorporate the above allegations.

64.

Zurich has no duty to defend, indemnify, or make any other payment in connection with the Underlying Lawsuit and the Underlying Plaintiffs' claims, for the reason that in the Underlying Lawsuit the Underlying Plaintiffs do not seek

damages for "property damage" caused by an "occurrence" within the meaning of the Zurich Policies.

65.

Taylor Morrison disputes that Zurich does not owe any defend, indemnify, or make any other payment in connection with the Underlying Lawsuit and the Underlying Plaintiffs' claims.

66.

By reason of the foregoing, an actual, present, and justiciable controversy exists between the parties.

67.

Because Zurich is currently providing a defense to Taylor Morrison, while it is uncertain of its legal obligation to do so, Zurich shows that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

68.

A judicial determination of this controversy in the following form is appropriate in order for the parties to determine their respective duties and obligations:  Zurich does not have an obligation under the Zurich Policies, or any of them, to defend, indemnify, or make any other payment in connection with the Underlying Lawsuit and the Underlying Plaintiffs' claims, for the reason that in the

Underlying Lawsuit the Underlying Plaintiffs do not seek damages for "property damage" caused by an "occurrence" within the meaning of the Zurich Policies.

69.

Zurich contends that there is no coverage under the Zurich Policies for the Underlying Lawsuit and the Underlying Plaintiffs' claims based upon facts currently available to it. Zurich reserves the right to raise any additional grounds for declaratory judgment in its favor in the future should it determine such grounds to exist.

## COUNT THREE

### DECLARATORY JUDGMENT: EXCLUSIONS IN THE ZURICH POLICIES BAR COVERAGE FOR THE UNDERLYING LAWSUIT

70.

Plaintiffs adopt and incorporate the above allegations.

71.

Zurich has no duty to defend, indemnify, or make any other payment in connection with the Underlying Lawsuit and the Underlying Plaintiffs' claims, because the Underlying Plaintiffs do not assert claims for covered "property damage," as the Zurich Policies exclude coverage for "Damage to Your Work," "Damage to Property," "Property Damage to the Insured's Work," "Damage to

Impaired Property or Property Not Physically Injured," and "Recall of Products, Work or Impaired Property".

72.

Taylor Morrison disputes that Zurich does not owe any defend, indemnify, or make any other payment in connection with the Underlying Lawsuit and the Underlying Plaintiffs' claims.

73.

By reason of the foregoing, an actual, present, and justiciable controversy exists between the parties.

74.

Because Zurich is currently providing a defense to Taylor Morrison, while it is uncertain of its legal obligation to do so, Zurich shows that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

75.

A judicial determination of this controversy in the following form is appropriate in order for the parties to determine their respective duties and obligations: Zurich does not have an obligation under the Zurich Policies, or any of them, to defend, indemnify, or make any other payment in connection with the Underlying Lawsuit and the Underlying Plaintiffs' claims, because the Underlying

Plaintiffs do not assert claims for covered "property damage," within the meaning of the Zurich Policies, as the Zurich Policies exclude coverage for "Damage to Your Work," "Damage to Property," "Property Damage to the Insured's Work," "Damage to Impaired Property or Property Not Physically Injured," and "Recall of Products, Work or Impaired Property".

**COUNT FOUR**

**DECLARATORY JUDGMENT:
COVERAGE UNDER THE ZURICH POLICIES IS LIMITED TO A
SINGLE EACH OCCURRENCE LIMIT**

76.

Plaintiffs adopt and incorporate the above allegations.

77.

Any coverage under the Zurich Policies and any obligation by Zurich to pay indemnity is limited by and subject to a single Each Occurrence Limit and the terms of the Claims Series Endorsement.

78.

Taylor Morrison disputes that any payment obligation by Zurich is limited by and subject to a single Each Occurrence Limit and the Claims Series Endorsement.

79.

By reason of the foregoing, an actual, present, and justiciable controversy exists between the parties.

80.

Because Zurich is currently providing a defense to Taylor Morrison, while it is uncertain of its legal obligation to do so, Zurich shows that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

81.

A judicial determination of this controversy in the following form is appropriate in order for the parties to determine their respective duties and obligations: Any coverage under the Zurich Policies and any obligation by Zurich to pay indemnity is limited by and subject to a single Each Occurrence Limit and the terms of the Claims Series Endorsement.

## COUNT FIVE

### DECLARATORY JUDGMENT:
### "PROPERTY DAMAGE" INCEPTING PRIOR TO THE ZURICH POLICIES IS EXCLUDED

82.

Plaintiffs adopt and incorporate the above allegations.

83.

Zurich has no duty to defend, indemnify, or make any other payment in connection with the Underlying Lawsuit and the Underlying Plaintiffs' claims, because any "property damage" claimed in the Underlying Lawsuit incepted prior to the policy period, excluded under the Zurich Policies, or any of them.

Taylor Morrison disputes that Zurich does not owe any defend, indemnify, or make any other payment in connection with the Underlying Lawsuit and the Underlying Plaintiffs' claims.

84.

By reason of the foregoing, an actual, present, and justiciable controversy exists between the parties.

85.

Because Zurich is currently providing a defense to Taylor Morrison, while it is uncertain of its legal obligation to do so, Zurich shows that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

86.

A judicial determination of this controversy in the following form is appropriate in order for the parties to determine their respective duties and obligations: Zurich does not have an obligation under the Zurich Policies, or any

of them, to defend, indemnify, or make any other payment in connection with the Underlying Lawsuit and the Underlying Plaintiffs' claims because any "property damage" claimed in the Underlying Lawsuit incepted prior to the policy period, excluded under the Zurich Policies, or any of them.

87.

Zurich contends that there is no coverage under the Zurich Policies for the Underlying Lawsuit and the Underlying Plaintiffs' claims based upon facts currently available to it. Zurich reserves the right to raise any additional grounds for declaratory judgment in its favor in the future should it determine such grounds to exist.

## COUNT SIX

## REIMBURSEMENT OF AMOUNTS ZURICH HAS PAID FOR DEFENSE OF CLAIMS NOT POTENTIALLY COVERED BY THE ZURICH POLICIES

88.

Plaintiffs adopt and incorporate the above allegations.

89.

No potential coverage exists under the Zurich Policies for the Underlying Lawsuit or the Underlying Plaintiffs' claims, for reasons that include the following:

a. Any damage alleged in the Underlying Lawsuit was not caused by an "occurrence" within the meaning of the Zurich Policies;

b. The Zurich Policies do not provide coverage for relief other than damages the insured becomes legally obligated to pay, precluding coverage for restitution and injunctive relief and other relief not constituting damages;

c. The Zurich Policies exclude coverage for "Contractual Liability";

d. Any "property damage" alleged in the Underlying Lawsuit is excluded from coverage under the Zurich Policies, by exclusions including "Damage to Your Work," "Damage to Property," "Property Damage to the Insured's Work," "Damage to Impaired Property or Property Not Physically Injured," and "Recall of Products, Work or Impaired Property";

e. The Zurich Policies exclude coverage for damage expected or intended from the standpoint of the insured;

f. The Each Occurrence Limit of Insurance applicable to the Zurich Policies and the Claims Series Endorsement restrict the coverage of the Zurich Policies;

g. Coverage under each of the Zurich Policies extends only to "property damage" that occurs during the respective policy period; and

-36-

h.     The Zurich Policies do not provide coverage for "property damage" that incepted, of which the insured had knowledge or notice, or was asserted in a claim for damage against the insured, prior to the policy period.

### 90.

Subject to its reservation of rights, including the right to reimbursement of defense costs for paid by Zurich for claims not potentially covered by the Zurich Policies, Zurich has paid amounts for Taylor Morrison's defense, in an amount to be proven at trial.

### 91.

Zurich is entitled to reimbursement from Taylor Morrison for the amounts it has paid in defense of Taylor Morrison against claims for which no potential coverage exists.

WHEREFORE, Plaintiffs Markel American Insurance Company and Zurich American Insurance Company pray that this Court:

(1)     Issue a Judgment declaring that Markel and Zurich owe no obligation under their respective liability insurance policies to indemnify, defend, or make any other payment in connection with the Underlying Lawsuit and Underlying Plaintiffs' claims;

(2)     Issue a Judgment declaring that any coverage under the Zurich Policies and any obligation by Zurich to pay indemnity is limited by and subject to a single Each Occurrence Limit and the terms of the Claims Series Endorsement;

(3)     Award reimbursement to Zurich; and

(4)     Award Plaintiffs such other and further relief as the Court deems just and proper.

[Signatures to Follow]

Respectfully submitted this 18th day of March, 2010.

FIELDS, HOWELL, ATHANS & MCLAUGHLIN
LLP

*Mr. Barrett*

191 Peachtree Street, NE
Suite 4600
Atlanta, GA 30303
Telephone: (404) 214-1250
Facsimile: (404) 214-1251
mathans@fieldshowell.com
mbarrett@fieldshowell.com

Michael J. Athans
Georgia Bar No. 026285
Matthew A. Barrett
Georgia Bar No. 039703

*Attorneys for Plaintiff Markel American
Insurance Company*

Respectfully submitted this 18th day of March, 2010.

McKENNA LONG & ALDRIDGE LLP

303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308-3265
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
revans@mckennalong.com
sberry@mckennalong.com

J. Randolph Evans
Georgia Bar No. 252336
J. Stephen Berry
Georgia Bar No. 053106

*Attorneys for Zurich American*
*Insurance Company*